IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

ELECTRIC MOTOR AND
CONTRACTING COMPANY, INC.,

    Plaintiff,

v.                                          CIVIL NO. 2:16cv310

TRAVELERS INDEMNITY COMPANY
OF AMERICA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Travelers Indemnity Company of America's ("Travelers") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss"). ECF No. 13. For the reasons stated herein, Travelers' Motion to Dismiss the Amended Complaint is **GRANTED**.

    I.      PROCEDURAL BACKGROUND

On May 6, 2016, Electric Motor and Contracting Company, Inc. ("Electric Motor") filed the instant action in the Circuit Court for the City of Chesapeake, Virginia, seeking a declaration that Travelers is obligated to honor Electric Motor's insurance claim, Claim No. EYY6707, under the Commercial General Liability coverage terms contained in Electric Motor's Commercial Insurance Policy with Travelers (hereinafter "CGL Policy"). Compl., ECF No. 1–1 ¶¶ 9, 55–60; CGL Policy, id. at Ex. A. Electric Motor's Claim No. EYY6707 sought reimbursement from Travelers for the costs of repairing a Navy generator that was allegedly damaged by the poor workmanship of Electric Motor's subcontractor. Id. ¶¶ 34, 38–39. On

June 20, 2016, Travelers successfully removed the action to this Court based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332, 1441. See Notice of Removal, ECF No. 1.[1]

On June 27, 2016, Travelers filed a motion to dismiss Electric Motor's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") for failure to state a claim. ECF No. 4. Travelers' principal argument in support of that motion was that the CGL Policy expressly restricts coverage to sums that the insured becomes "legally obligated to pay as damages," and that Electric Motor's complaint only alleged repair costs that it voluntarily assumed, not costs that it became "legally obligated to pay as damages." ECF No. 5 at 1–2 (citing CGL Policy, ECF No. 12-1 § I(1)(a)). Electric Motor opposed Travelers' motion, arguing inter alia that the plain meaning of "legally obligated to pay as damages" encompasses Electric Motor's contractual obligation to repair the generator as alleged in the complaint. Opposition Brief, ECF No. 6 at 7–8.

After Traveler's motion to dismiss was fully briefed and argued by both parties, the Court granted Travelers' motion, without prejudice, and provided Electric Motor fourteen days to amend its complaint "to allege facts sufficient to state a claim upon which relief can be granted." August 5, 2016 Order, ECF No. 11 at 11. In that Order, the Court withheld determining the meaning of the phrase "legally obligated to pay as damages" because it found that Electric Motor's complaint failed to allege, beyond mere conclusory statements, any obligation by which it incurred the repair costs in question. Id. at 9–10.

On August 19, 2016, Electric Motor filed its First Amended Complaint for Declaratory Judgment and Payment ("Amended Complaint" or "Am. Compl.") seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 regarding Traveler's obligation to pay Claim No.

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Travelers, a Connecticut corporation, and Electric Motor, a Virginia corporation, are citizens of different states, and the amount in controversy is greater than $75,000. See Am. Compl., ECF No. 12 ¶¶ 5–6, 48.

2

EYY6707 and seeking an award of attorneys' fees and costs. ECF No. 12. On September 2, 2016, Travelers filed the instant Motion to Dismiss the First Amended Complaint and a supporting memorandum ("Def. Mem."). See ECF No. 13; ECF No. 14. On September 23, 2016, Electric Motor filed a Memorandum in Opposition to Travelers' Motion to Dismiss ("Opp. Mem."). ECF No. 16. On October 10, 2016, Travelers filed a reply brief ("Reply"), ECF No. 17, and on November 21, 2016, the parties appeared before the Court and presented oral argument, ECF No. 20. Travelers' Motion to Dismiss the Amended Complaint is now ripe for decision by this Court.

## II. FACTUAL BACKGROUND

In a motion to dismiss for failure to state a claim, the Court accepts the plaintiff's well-pled factual allegations as true. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A summary of the facts alleged in Electric Motor's Amended Complaint follows.

Electric Motor contracts with the United States Navy to repair generators used on the Avenger-class mine countermeasure ships ("MCMs"), which are operated by the Navy and the Naval Sea Systems Command ("NAVSEA"). Am. Compl., ECF No. 12 ¶ 13. On or about October 20, 2011, Travelers issued Commercial Insurance Policy Number Y-630-5694C877-TIA-11 to Electric Motor. Id. ¶ 10. The policy ran for two consecutive one-year periods: October 6, 2011, to October 6, 2012, and October 6, 2012, to October 6, 2013. Id. This policy included CGL coverage, which is at issue here. Id. ¶ 12.

In 2011, Electric Motor began repairs on three MCM generators known as Generator 2, Generator 5, and Generator 7. Id. ¶ 14. Specifically, by purchase order dated November 22, 2011, Electric Motor contracted with Navy contractor, Amee Bay, to repair Generator 7. Id. ¶ 16. A copy of this purchase order is attached to the Amended Complaint as Exhibit B

(hereinafter "Purchase Order").² Electric Motor subsequently issued Invoice No. 0127889 to Amee Bay for payment. Id. ¶ 17. This invoice, dated December 11, 2016, is attached to the Amended Complaint as Exhibit C (hereinafter "Invoice"). Page 2 of the Invoice contains a warranty, which states, in relevant part:

> [Electric Motor] warrants, to the extent to which any of the same may be applicable, that (a) any replacement or other parts furnished by it or any work done by it on the Purchaser's equipment or both shall be free of defects in workmanship and material, (b) any specialized tools, equipment and instruments for the use of which a charge is made to the Purchaser shall be adequate for the work to be performed and (c) the engineering services performed by it will be competent and any recommendations of its representative shall reflect his best judgment.
>
> [Electric Motor] shall upon prompt written notice from the purchaser, correct any failure to conform to any of the applicable foregoing warranties which may appear with in a period of one (1) year after completion of the work. . . .
>
> The Remedy(ies) provided above shall be Purchaser's sole remedy(ies) for any failure of [Electric Motor] to comply with the foregoing warranties, whether claims by the purchaser are based on contract or in tor[t] (including negligence) ...

Id. at Ex. C at 2.

As part of its repair services on Generators 2, 5, and 7, Electric Motor shipped the generators to Akard Commutator of Tennessee ("ACT"), one of its subcontractors, to complete independent repair work on the generators' rotors. Id. ¶ 21. ACT performed the rotor repairs and then returned the rotors to Electric Motor for reinstallation. Id. ¶ 22. Electric Motor "was not able to disassemble or view the internal workings of the rotors prior to their reinstallation in the Generators." Id. ¶ 23. On January 31, 2012, the three Generators were returned for reinstallation on the MCMs. Id. ¶ 24. However, in June 2012, the Generators failed aboard their respective vessels. Id. ¶ 25.

---

² "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

4

### First Claim, No. ESV8183, Honored

Generators 2 and 7 were returned to Electric Motor for repairs on July 23, 2012, and on August 30, 2012, respectively. Id. ¶ 26. After disassembling the generators, Electric Motor determined that ACT performed defective workmanship on the rotors, which had caused the malfunction. Id. ¶ 28. Specifically, Electric Motor determined that ACT failed to remove weld residue and properly torque compression ring bolts on the rotors. Id. Generator 2 and 7 were repaired and returned to NAVSEA in September 2012. Id. ¶ 29. Generator 5 was repaired in place onboard the vessel. Id. Electric Motor then filed a claim with Travelers, Claim No. ESV8183, under the CGL Policy, seeking reimbursement for the costs that Electric Motor had incurred to diagnose and repair the generators. Id. ¶ 31. By checks dated June 7, 2013, and July 16, 2013, Travelers honored this claim and paid Electric Motor a total of $99,356.67. Id. ¶ 35.

### Second Claim, No. EYY6707, Denied

Following reinstallation, Generators 2 and 7 failed testing in December 2012, and were not returned to service. Id. ¶¶ 36–37. NAVSEA conducted diagnostics from January 2013 to August 2013. Id. ¶ 38. On or about December 5, 2013, NAVSEA returned Generator 7 to Electric Motor for inspection and repair. Id. ¶ 39. Electric Motor hired a new subcontractor, Industrial Commutator Corporation ("ICC"), to evaluate and repair the rotors. Id. ¶ 40. ICC disassembled the rotor. Id. ¶ 41. Electric Motor alleges that this was the "first time" it could fully inspect ACT's work product from the first round of repairs in 2011 and 2012. Id. It determined that ACT's poor workmanship had caused "additional damage to the Generator's rotors." Id. Electric Motor felt "immense pressure from NAVSEA to quickly diagnose and repair Generator 7, because it was needed on board the U.S.S. Patriot." Id. ¶ 43. ICC completed repairs on Generator 7 on March 6, 2014. Id. ¶ 44.

On February 24, 2014, Electric Motor submitted a second claim to Travelers, Claim No. EYY6707, under the CGL Policy, seeking $125,000 to cover the costs of the second round of repairs to Generator 7 (hereinafter, "Repair Costs") as a result of the damage caused by ACT. Id. ¶¶ 45–48. According to Electric Motor, it was "legally obligated to incur these costs" pursuant to the Purchase Order and Invoice with Amee Bay. Id. ¶ 46. On May 12, 2014, Travelers denied Claim No. EYY6707, citing Section IV.2.d of the CGL Policy, which states: "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." Id. ¶ 50. On October 13, 2015, Electric Motor sent a letter to Travelers contesting the denial of the claim. Id. ¶ 51. On December 15, 2015, Travelers reaffirmed its denial of the claim. Id. ¶ 52.

## The CGL Policy[3]

The CGL Policy is attached to the Amended Complaint as Exhibit A. Id. at Ex. A. Electric Motor alleges that Travelers is obligated to honor Claim No. EYY6707 pursuant to the policy's insuring agreement, which states: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. . . ." Id. ¶ 53 (quoting CGL Policy, id. at Ex. A § I.1.a). Electric Motor further alleges that ACT's "negligent repairs" to Generator 7's rotors caused "property damage" to Generator 7 as that term is defined in the CGL Policy, which includes "[p]hysical injury to tangible property, including all resulting loss of use of that property." Id. ¶¶ 54–55 (quoting Ex. A at 39, Amendment of Coverage – Property Damage). Finally, Electric Motor claims that "Claim No. EYY6707 is not subject to any exclusion under the [CGL] Policy." Id. ¶ 63.

---

[3] Plaintiff's allegations as to the meaning and application of the CGL Policy are legal conclusions, which are not entitled to a presumption of truth on a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

6

## III. APPLICABLE LAW

A Rule 12(b)(6) motion to dismiss for failure to state a claim should be granted if it appears that the plaintiff is not "entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) (citation omitted). To survive a motion to dismiss, the facts alleged in the complaint "must be enough to raise a right to relief above a speculative level" and must be sufficient "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. In resolving a Rule 12(b)(6) motion, the court must assume the truth of all facts alleged in the complaint and construe the factual allegations in favor of the non-moving party. Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009). But the court is not bound by the complaint's legal conclusions. Id. Furthermore, the court may not consider any matters outside the pleadings, but it may consider written instruments that are attached as exhibits to a pleading, Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013), as these exhibits are "part of the pleading for all purposes," Fed. R. Civ. P. 10(c). Where the complaint's bare allegations conflict with such an exhibit, the exhibit controls. Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

The issue before the Court is the interpretation of an insurance contract. Because this is a diversity action, the Court must apply the choice-of-law rules of the jurisdiction in which this Court sits, which is Virginia. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). Virginia's choice-of-law rules dictate that, for the interpretation of insurance contracts, the law of the state in which "the insurance contract is written and delivered" governs. CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009) (quoting Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993)). The Amended Complaint alleges that the insurance policy at issue was acquired and delivered to Electric Motor in Virginia. ECF No. 12 ¶¶ 7, 11. Thus,

7

Virginia law governs the CGL Policy at issue. The parties do not dispute this. Def. Mem., ECF No. 14 at 8; Opp. Mem., ECF No. 16 at 8.

Under Virginia law, "[i]t is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." Barber v. VistaRMS, Inc., 634 S.E.2d 706, 712 (Va. 2006). "Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc., 628 S.E. 2d 539, 541 (Va. 2006).

When interpreting an insurance contract, "[e]ach phrase and clause . . . should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein." Seals v. Erie Ins. Exch., 674 S.E.2d 860, 862 (Va. 2009). But where there is ambiguity in the policy language, the language must be construed in favor of the insured. PBM Nutritionals, LLC v. Lexington Ins. Co., 724 S.E.2d 707, 713 (Va. 2012) (internal citations omitted). A term of a contract is considered ambiguous "when it may be understood in more than one way or when it refers to two or more things at the same time." Granite State Ins. Co. v. Bottoms, 415 S.E.2d 131, 134 (Va. 1992). However, "an insurance policy is not ambiguous merely because courts of varying jurisdictions differ with respect to the construction of policy language." Id.

IV. **DISCUSSION**

In its Motion to Dismiss, Travelers argues that Electric Motor failed to allege sufficient facts in the Amended Complaint to support its claim that it was "legally obligated to pay [the Repair Costs] as damages" as required for coverage under the CGL Policy's insuring agreement.

Def. Mem., ECF No. 14 at 8 (quoting CGL Policy, ECF No. 12-1, § I.1.a). Travelers provides two independent bases for this argument, which are discussed below.

### A. "LEGALLY OBLIGATED TO PAY AS DAMAGES"

First, Travelers argues that Electric Motor has failed to allege any final judgment, settlement decision, court order, administrative finding, or statutory mandate by which it was obligated to pay the Repair Costs such that those Repair Costs could constitute "sums that the insured [became] legally obligated to pay as damages" under the insuring agreement of the CGL Policy. Id. ¶ 12 (quoting CGL Policy, ECF No. 12–1 § I.1.a). To determine whether Electric Motor has alleged sufficient facts in its Amended Complaint to establish that it was "legally obligated to pay [the Repair Costs] as damages" to fall within the scope of the insuring agreement, the Court must first ascertain the meaning of this phrase.

#### 1. The Meaning of the Phrase "Legally Obligated to Pay as Damages"

As previously noted by this Court, Virginia courts have not yet interpreted the meaning of this phrase in standard CGL policies.[4] Nor are any of the words within the phrase defined in the CGL Policy itself. Therefore, the Court must first look to the common and ordinary meaning of these words, while presuming that no word or clause is meaningless or inserted needlessly into the contract. D.C. McClain, Inc. v. Arlington Cty., 452 S.E.2d 659, 662 (Va. 1995).

At the outset, the Court notes that the ordinary meaning of the phrase "legally obligated to pay" is broad and likely encompasses any duty under the law to pay money. However, this phrase must be construed in light of the adjoining clause "as damages." Seals, 674 S.E.2d at

---

[4] While Electric Motor concedes this point, it notes that the Supreme Court of Virginia has found this phrase to be ambiguous in another context. See ECF No. 16 at 9 (citing United Servs. Auto. Ass'n v. Webb, 369 S.E.2d 196, 198 (Va. 1988)). However, Webb is inapposite as the court in that case was interpreting a family automobile liability policy and found the phrase ambiguous only as to whether "damages" included punitive damages in a wrongful death lawsuit, which is not at issue here.

862. In fact, the Court must presume that the clause "as damages" lends specific meaning to the phrase and thus narrows its otherwise broad scope. See D.C. McClain, 452 S.E.2d at 662.

In common usage, the plural noun "damages" has a specific meaning in a legal context, such as here, where a "legal obligation" is involved. The Oxford English Dictionary defines "damages," when used in "law," as "[t]he value, estimated in money, of something lost or withheld; the sum of money claimed or adjudged to be paid in compensation for loss or injury sustained." Damages, Oxford English Dictionary (2d ed. 1991). Similarly, Black's Law Dictionary defines the term as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." Damages, Black's Law Dictionary (10th ed. 2014). Therefore, paying a sum as "damages" pursuant to a legal obligation is not equivalent to paying any sum that is legally owed or legally required to be paid. Rather, "damages" has a more specific meaning, indicating a sum that is claimed by another, or ordered to be paid, as remediation for something lost or as compensation for injury.

For this reason, the Court does not find the phrase "legally obligated to pay as damages" in the CGL Policy to be ambiguous, as Electric Motor claims. See Opp. Mem., ECF No. 16 at 9. Rather, this Court adopts the plain meaning of the phrase, which is that an insured becomes "legally obligated to pay [a sum] as damages" when some claim, order, or adjudication has directed the insured to pay a sum, pursuant to a binding legal obligation, as compensation or remediation for a loss or injury.

Notably, this interpretation is consistent with the previous decisions of Chief Judge Smith of this Court in the Dragas cases, which the parties discuss extensively in their briefing on the instant Motion to Dismiss. See Builders Mut. Ins. Co. v. Dragas Mgmt. Corp. ("Dragas I"), 709 F. Supp. 2d 432, 440 (E.D. Va. 2010); Builders Mut. Ins. Co. v. Dragas Mgmt. Corp. ("Dragas

II"), 709 F. Supp. 2d 441, 447 (E.D. Va. 2010); Builders Mut. Ins. Co. v. Dragas Mgmt. Corp. ("Dragas III"), 793 F. Supp. 2d 785, 796–97 (E.D. Va. 2011), vacated, 497 F. App'x 313 (4th Cir. 2012).[5] In these cases, the Court ultimately distinguishes a legal obligation to pay remediation costs from a legal obligation to pay remediation costs "as damages" under a CGL policy based on whether the insured was subject to a coercive directive to pay.

In Dragas I, the Court declined to resolve whether such coercive directive must stem from a lawsuit against the insured, as some jurisdictions have held. See, e.g., Detroit Water Team Joint Venture v. Agric. Ins. Co., 371 F.3d 336, 339 (6th Cir. 2004) (applying Michigan law). But the Court held that, "at a minimum, there must be some factual support for a legal obligation to remediate, other than a voluntary business decision by [the insured]," for the insured to survive a motion to dismiss. 709 F. Supp. 2d at 440 (emphasis in original). Later, in Dragas III, at the summary judgment stage, the Court held that the insured ultimately has to prove that it paid sums "as damages," that is, it was compelled by a "final judgment or a settlement of a lawsuit, a strict liability statute, or other coercive legal obligation" to pay those sums. 793 F. Supp. 2d at 796 (emphasis added). Therefore, a contractual duty to incur costs, without a coercive legal directive to pay those costs as damages, would not qualify.[6]

To be clear, this Court declines to find that, under a CGL Policy, the insured may only become "legally obligated to pay [sums] as damages" pursuant to a final judgment or settlement

---

[5] Although the final judgment in Dragas was ultimately vacated by the Court of Appeals for lack of jurisdiction, its holding as to the CGL policy is still persuasive. See, e.g., Kornahrens v. Evatt, 66 F.3d 1350, 1357 (4th Cir. 1995) (finding that a decision vacated on other grounds was still instructive and persuasive).

[6] The Court is aware that some courts in other jurisdictions have held the opposite. See Opp. Mem., ECF No. 14, at 10 (citing, e.g., Big-D Constr. Corp. v. Take it for Granite Too, 917 F. Supp. 2d 1096, 1117 (D. Nevada 2013; Desert Mountain Props. Ltd. P'Ship v. Liberty Mut. Fire Ins. Co., 236 P.3d 421 (Ariz. Ct. App. 2010)). But these decisions depart from the plain meaning of the phrase "legally obligated to pay as damages" and thus fail to persuade this Court. See Bottoms, 415 S.E.2d at 134 ("[A]n insurance policy is not ambiguous merely because courts of varying jurisdictions differ with respect to the construction of policy language.")

11

of a lawsuit. As noted above, the ordinary meaning of the word "damages" encompasses sums claimed by another, not just those ordered to be paid. Therefore, if the insured alleges (1) facts sufficient to show that a claim for monetary compensation or remediation existed and (2) facts sufficient to show that the insured was legally obligated to pay such a claim, this would be sufficient to state a claim that the paid sum fell within the scope of the insuring agreement of the CGL Policy.[7] With this in mind, the Court now turns to the sufficiency of the allegations in Electric Motor's Amended Complaint.

### 2. The Amended Complaint Fails to Allege Facts to Support that Electric Motor Was "Legally Obligated to Pay [the Repair Costs] as Damages"

Electric Motor's disputed claim, Claim No. EYY6707, seeks $125,000 from Travelers, which "represent[s] the costs to repair the property damages to Generator 7 caused by ACT's negligent workmanship." Am. Compl., ECF No. 12, ¶ 48. According to the Amended Complaint, Electric Motor was "legally obligated" to incur these Repair Costs pursuant to its Purchase Order and Invoice with Amee Bay. Id. ¶ 46. Specifically, the warranty provision on page 2 of the Invoice "require[d] Electric Motor to provide its services 'free of defects in workmanship and material,' and render[ed] [Electric Motor] responsible for the actions, including negligent repairs, of its subcontractors." Id. The terms of the warranty itself, which is attached to and part of the Amended Complaint, provide that "[Electric Motor] shall upon prompt written notice from the purchaser, correct any failure to conform to any of the applicable foregoing warranties which may appear with in a period of one (1) year after completion of the

---

[7] On this point, the Court is careful to distinguish the findings of the Court in Dragas III on summary judgment, in which the "homeowners' [d]emands under the guise or potential of a legal right" were found to be insufficient to create a "legal obligation to pay by the insured." 793 F. Supp. 2d at 796–97. In Dragas III, at the summary judgment stage, the insured had to prove a binding legal obligation to pay the sums demanded. By contrast, to survive a motion to dismiss, the insured need only allege facts that, when taken as true, are sufficient to establish that it was under a binding legal obligation to pay compensatory or remedial funds as ordered or directed by another.

work. . . ." Id. at Ex. C at 2. Therefore, the Amended Complaint alleges that the source of Electric Motor's legal obligation to pay the Repair Costs was a contractual duty to repair Generator 7 pursuant to a warranty agreement with Amee Bay.

But a contractual duty to incur the Repair Costs, without more, is not sufficient to bring the Repair Costs within the scope of the CGL Policy's insuring agreement. Electric Motor must allege that it was "legally obligated to pay [the Repair Costs] as damages." To do so, the Amended Complaint must allege some claim, order, or adjudication, which directed Electric Motor to pay the Repair Costs as compensation or remediation for a loss or injury. However, the Amended Complaint does not contain any allegations relating to a claim, adjudication, or other coercive directive requiring Electric Motor to repair Generator 7. The only allegations relating to Electric Motor and the Navy communicating about repairing Generator 7 are as follows:

> 39. NAVSEA returned Generator 7 to Electric Motor for inspection and repair on or about December 5, 2013. . .
>
> 43. Electric Motor was under immense pressure from NAVSEA to quickly diagnose and repair Generator 7, because it was needed on board the U.S.S. Patriot.
>
> 44. ICC completed its repairs if Generator 7 and its rotor on March 6, 2014, and Electric Motor immediately returned Generator 7 to NAVSEA.

Id. ¶¶ 39, 43–44. The Amended Complaint makes no mention of a claim, demand, or even a communication by NAVSEA that directed Electric Motor to incur the Repair Costs as compensation or remediation for damage or loss pursuant to a binding legal obligation. The fact that Electric Motor felt "pressure" by NAVSEA to repair Generator 7 does not imply that Electric Motor was directed to pay the Repair Costs pursuant to a binding legal obligation. Nor does Electric Motor's alleged duty to repair Generator 7 pursuant to the warranty provision of the Invoice mean that it was legally obligated to pay the Repair Costs "as damages." Nor does it

appear that Electric Motor could make such an allegation if given a second opportunity to amend its pleading. It is clear from its allegations in the Amended Complaint that Electric Motor chose to incur the Repair Costs absent any claim, demand or other communication by the Navy directing Electric Motor to pay such sums, and certainly absent any lawsuit or other proceeding.

In sum, the Amended Complaint alleges that Electric Motor incurred the Repair Costs pursuant to a contractual duty, not pursuant to a coercive directive to compensate for a loss or damage that it was legally obligated to remediate. As such, even when taking the allegations of the Amended Complaint as true and construing them in a light most favorable to the Plaintiff, Electric Motor has failed to allege that it was "legally obligated to pay [the Repair Costs] as damages" as required to state a claim that Travelers is bound by the CGL Policy to cover these costs. For this reason, the Court **FINDS** that the Amended Complaint fails to state a claim upon which relief can be granted.

### B.   CONTRACTUAL LIABILITIES UNDER THE CGL POLICY

As a secondary ground for dismissal, Travelers argues that, according to the Amended Complaint, Electric Motor incurred the Repair Costs pursuant to a contractual obligation, but Virginia law is clear that contractual liabilities are excluded from the insuring agreement of CGL policies, which are intended to encompass only the tort liabilities of the insured. Def. Mem., ECF No. 14 at 13. In support, Travelers cites to Boiler Brick and Refractory Company v. Maryland Casualty Company, 168 S.E.2d 100, 102 (Va. 1969), in which the Supreme Court of Virginia held that "Coverage B" in the operative CGL policy—which is similar to the insuring agreement in the instant case—only covered "tort liability for 'damages because of injury to or destruction of property,' not damages resulting from assumed or imposed contractual liability." Travelers argues that Boiler Brick is still good law and, in support, cites to a more recent decision of the First Circuit, which declined to extend CGL coverage to claims based on the

14

insured's contractual obligations because doing so would convert the CGL Policy into a "performance bond" for the insured. Def. Mem., ECF No. 16 at 14 (citing Lopez & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 67 (1st Cir. 2012)).

In response, Electric Motor asks the Court to reject Travelers' application of Boiler Brick for two reasons. First, Electric Motor argues that its liability for repairs was not solely contractual because its duty to repair Generator 7 "stem[med] from the tortious conduct of its subcontractor." Opp. Mem., ECF No. 16 at 14. Id. Second, Electric Motor argues that its CGL Policy, like most modern CGL policies, includes a subcontractor carve-out to the "your work" exception to the insuring agreement, which reflects a fundamental expansion of the scope of CGL coverage that was not in place in 1969 when Boiler Brick was decided. Id. (citing CGL Policy § I.2.1). According to Electric Motor, this modern carve-out reveals the parties' clear intent to include within the scope of coverage property damage caused by a subcontractor's defective performance, even when the duty of the insured to repair that property damage is based in contract. Id. at 15.

### 1. The Amended Complaint Alleges a Contractual Obligation

At the outset, the Court rejects Electric Motor's claim that its legal obligation to incur the Repair Costs was a hybrid of contract and tort liabilities. The only legal obligation to incur those costs, as alleged in the Amended Complaint, was the warranty provision contained in Electric Motor's Purchase Order and Invoice with Amee Bay. Amend. Compl., ECF No 12 ¶¶ 16–20, 34, 46; id., Ex. C at 2. While Electric Motor characterizes ACT's repairs and workmanship as "negligent," see id. ¶¶ 46, 48, Electric Motor unequivocally states that its duty to correct such "negligent" work was based in contract. Therefore, to the extent there is a contractual-liability exclusion under Virginia law, it would certainly apply here.

### 2. The Contractual Liability Exclusion in Historical Context

A more complex question is whether the holding of <u>Boiler Brick</u> is still applicable to modern CGL policies, such as the one at issue here. A brief consideration of historical context is appropriate. For over sixty years, the Insurance Services Office ("ISO") has drafted the main CGL 'occurrence' policy form, known as "CG 00 01," which is adopted by many insurers nationwide. <u>See</u> Lee H. Shidlofsy, <u>Deconstructing CGL Insurance Coverage Issues in Construction Cases</u>, 9 No. 2 Journal of the ACCL 53, 74 (2015). The form has been developed and revised over time, and its drafters routinely grapple with how to cover construction defects and what constitutes foreseeable business risk. <u>Id.</u> at 74–75.

In 1966, a significant revision was made to the CGL form to exclude from coverage any property damage arising out of "your work," that is, work performed by the insured or on behalf of the insured, including subcontractors. <u>Id.</u> at 75. However, by 1973, CGL coverage was seen as too restrictive, and contractors tried to limit what was considered foreseeable business risk. <u>Id.</u> As a result, two important carve-outs to the "your work" exclusion were added to the standard CGL occurrence form: the operations exception and the subcontractor exception. <u>Id.</u> at 75–76. These carve-outs expanded the scope of coverage related to construction defects and challenged earlier interpretations of what constitutes uninsured business risk under CGL policies. Subcontractor work, in particular, was viewed as less controlled by the insured, and thus property damage arising from such work was considered less foreseeable than damage arising from the insured's own work. <u>Id.</u> at 84.

### 3. <u>Boiler Brick</u> May Not Apply Here

For this reason, Electric Motor's point that <u>Boiler Brick</u> was decided before the subcontractor exception was added to standard CGL policies is well-taken. While other

jurisdictions have upheld a contract-liability exclusion since the exception was added,[8] Virginia courts have not expressly done so. And the Fourth Circuit's interpretation of Virginia law suggests that such reconciliation may not be possible. In Stanley Martin Companies, Inc. v. Ohio Casualty Group, the Court of Appeals held that, if a subcontractor's defective work damages the nondefective work of the insured, such damage is sufficiently unexpected or fortuitous to constitute an "occurrence" under a standard CGL policy. 313 Fed. App'x 609, 613 (4th Cir. 2009) (unpublished). Thus, a CGL policy can theoretically cover sums paid as damages pursuant to a contractual duty to repair damage to the insured's own work if such damage was caused by a subcontractor's defective work. Id. For this reason, it appears to the Court that the strict contract-liability exclusion set forth in Boiler Brick may not apply to the CGL Policy at issue. However, because this Court has already found that Electric Motor's Amended Complaint must be dismissed on other grounds, see supra Part IV.A, the Court need not decide the issue.

### C. THE DECLARATORY JUDGMENT ACT

In its opposition brief, Electric Motor argues that Travelers' Motion to Dismiss the Amended Complaint should nonetheless be denied because Electric Motor brings its claim for relief under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, and Travelers has not and cannot show that the Amended Complaint fails to state a claim under the DJA. Opp. Mem., ECF No. 16 at 6–7. Specifically, Electric Motor argues that it has alleged the three necessary elements to state a claim under the DJA: (1) that an actual controversy exists between the parties, (2) that there is an independent basis for jurisdiction, and (3) that exercising jurisdiction under the DJA is not an abuse of the district court's discretion. Id. (citing Kettler Int'l, Inc. v. Starbucks Corp., 55 F. Supp. 3d 839, 846 (E.D. Va. 2014)).

---

[8] See, e.g., Texas Data Specialties, Inc. v. Transcon. Ins. Co., 125 F.3d 909, 910 (5th Cir. 1997) (applying Texas law); Lopez, 667 F.3d at 69 (applying Puerto Rico law).

The Court disagrees. The DJA provides a remedy in cases otherwise in the Court's jurisdiction; it does not create an independent cause of action. Seized Prop. Recovery, Corp. v. U.S. Customs & Border Prot., 502 F. Supp. 2d 50, 64 (D.D.C. 2007) (citing GNB Battery Technologies, Inc. v. Gould, Inc., 65 F.3d 615, 619 (7th Cir. 1995)). Therefore, the DJA only provides relief "if a judicially remediable right already exists." Id. (citation omitted).

Electric Motor seeks a declaration from this Court that it has a right to payment from Travelers pursuant to the terms of an insurance contract. The DJA can provide no relief if Electric Motor fails to state a cognizable right to such payment. Because this Court has found that Electric Motor has failed to state such a claim, the DJA cannot save the Amended Complaint from dismissal.

### D. Estoppel

Finally, Electric Motor argues that the Amended Complaint states a valid claim for relief under the theory of estoppel. Opp. Mem., ECF No. 16 at 5. In support, Electric Motor argues that the Amended Complaint alleges all four elements of estoppel: (1) Travelers represented that coverage existed for similar generator-repair costs when it honored Claim No. ESV8183; (2) Electric Motor justifiably relied on that representation when it incurred the Repair Costs at issue; (3) Travelers subsequently changed its position by refusing to honor Claim No. EYY6706; and (4) this refusal was detrimental to Electric Motor. Id. (citing Selective Way Ins. Co. v. Apple, 2014 WL 6747114, at *3 (W.D. Va. Dec 1, 2014) (stating the four elements of estoppel)).

Integral to this claim of estoppel is Travelers' decision to honor Claim No. ESV8183. However, the decision to honor this claim is memorialized by a letter,[9] in which Travelers expressly represented to Electric Motor that its decision "is not intended and should not be

---

[9] The court may consider documents that are attached to the motion to dismiss "so long as they are integral to the complaint . . ." Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

construed as an admission that coverage exists under your insurance policy" and that "Travelers is not agreeing that future similar claims will also be indemnified." July 17, 2013 Letter, ECF No. 17-1, attached as Ex. A to Def. Mem., at 1. This letter clearly negates at least the first two elements of estoppel cited by Electric Motor. Travelers did not represent that coverage existed, nor could Electric Motor justifiably relied on any such representation in light of the July 17, 2013 letter. See Harris v. Criterion Ins. Co., 281 S.E.2d 878, 881 (Va. 1981) ("Unwarranted reliance will not invoke the application of estoppel.").

Electric Motor's estoppel argument also fails because, under Virginia law, the doctrine of estoppel cannot be used to enlarge the coverage of an insurance policy. Morrow Corp. v. Harleysville Mut. Ins. Co., 101 F. Supp. 2d 422, 429 n.7 (E.D. Va. 2000) (citing Blue Cross and Blue Shield of Virginia v. Wingfield, 391 S.E.2d 73, 74–75 (Va. 1990)). Because the Amended Complaint has failed to allege facts, which, if true, would show that the Repair Costs are covered by the terms of the insuring agreement in the CGL Policy, estoppel is of no avail here.

## V. CONCLUSION

For the reasons stated herein, Traveler's Motion to Dismiss the First Amended Complaint, ECF No. 13, is **GRANTED,** and Electric Motor's First Amended Complaint, ECF No. 12, is hereby **DISMISSED WITH PREJUDICE.**

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
Senior United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, VA
January 27, 2017